**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CHARLES TURPIN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-2453 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 20 |
| | : | | |
| DARNELL RAY, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANTS ROWLEY, STRANGE, AND THE
DISTRICT OF COLUMBIA'S MOTION TO DISMISS; DECLINING TO EXERCISE JURISDICTION
OVER REMAINING STATE LAW CLAIMS**

## I.    INTRODUCTION

Plaintiff Charles Turpin brings suit against Metropolitan Police Department Officers

Anthony Rowley and Sharon Strange, the District of Columbia, and landlord Darnell Ray. Mr.

Turpin asserts individual and municipal liability claims under 42 U.S.C. § 1983 against Officers

Rowley and Strange and the District of Columbia for violations of his Fourth Amendment right

to freedom from unreasonable seizures. He has also brought common law claims for trespass,

false arrest, wrongful eviction, and malicious prosecution against Officers Rowley and Strange,

and the common law claim of malicious prosecution against the District of Columbia. He further

asserts individual common law claims against Darnell Ray for wrongful eviction, false arrest,

and malicious prosecution. For the forthcoming reasons, the Court grants Officers Rowley and

Strange's motion to dismiss the § 1983 claims of illegal entry, false arrest, and malicious

prosecution. Furthermore, the Court grants the District of Columbia's motion to dismiss the

§ 1983 municipal liability claim. Finally, the Court declines to exercise supplemental jurisdiction

over Mr. Turpin's remaining state law claims. Thus, the common law claims of false arrest, trespass, wrongful eviction, and malicious prosecution against Officers Rowley and Strange; of malicious prosecution against the District of Columbia; and of wrongful eviction, false arrest, and malicious prosecution against Darnell Ray will be remanded to the D.C. Superior Court.

## II.  FACTUAL BACKGROUND [1]

Charles Turpin is a District of Columbia resident who, prior to commencement of this action, had been a long-time tenant of Darnell Ray's. Am. Compl. ¶¶ 8–9, ECF No. 5. Mr. Turpin and his partner, Ms. Miles, had lived in an apartment rented from Mr. Ray for at least 10 years. *Id.* ¶ 8. Ms. Miles's name was on the lease. *Id.* ¶ 9. Following Ms. Miles's death in 2016, Mr. Ray indicated to Mr. Turpin that he wished to sell the apartment and asked Mr. Turpin to vacate the premises. *Id.* ¶ 14. In July 2016, Mr. Ray initiated a landlord-tenant case against Mr. Turpin seeking repossession of the apartment. *Id.* ¶ 15. The lawsuit resulted in a judgment of possession against Mr. Turpin, and on October 13, 2016, the court issued a Writ of Restitution authorizing Mr. Turpin's eviction. *Id.* ¶ 15–16. The Writ was set to expire seventy-five days from issuance. *Id.* ¶ 16.

In the District of Columbia, evictions are carried out by the U.S. Marshals Service. *See* D.C. Code § 13-302 ("[T]he United States Marshal for the District of Columbia . . . shall serve the process of . . . the Superior Court of the District of Columbia."); D.C. Super. Ct. Land. & Ten. R. 16 (detailing process by which U.S. Marshal execute writs of restitution); Pl.'s Opp'n Defs.' Mot. Dismiss. ("Pl.'s Opp'n") Ex. 1, ECF No. 11-1; *see also Mendes v. Johnson*, 389 A.2d 781, 786–87 (D.C. 1978) (holding evictions may only be executed by appropriate legal

---

[1] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

process not landlord self-help); D.C. Mun. Regs. tit. 6-A, § 200.11 ("Members of the [police] force shall not serve civil process; nor shall they render assistance in civil cases."). Acting pursuant to this rule, Mr. Ray paid the required eviction fee to the Marshals Service. Am. Compl. ¶ 17. During the seventy-five-day period in which the Writ of Restitution was active, Mr. Turpin continued to occupy the residence and was never officially removed by the Marshals. *See id.* ¶ 19. On December 27, 2016, the Writ of Restitution for Mr. Turpin's eviction expired without the Marshals Service taking any action to execute the eviction. *Id.* ¶ 18. At some point between when the court issued the Writ of Restitution and when it expired, Mr. Ray changed the locks of the apartment, barring Mr. Turpin from entry. *Id.* ¶ 19. As a result of the changed locks, Mr. Turpin, who at that time still occupied the apartment, forced entry into the unit by breaking through the rear door. *Id.* ¶ 20.

Following Mr. Turpin's re-entry into the apartment he received no communication from Mr. Ray until Mr. Ray called police officers to the premises on December 29, 2016. *Id.* ¶¶ 21–23. On first dispatch, the officers that arrived at the scene did not enter the apartment and ultimately declined to intervene in what they deemed a civil matter between a landlord and tenant. *Id.* ¶ 22. Later that day, Mr. Ray again called the police, and different officers, Officers Rowley and Strange, were dispatched to the premises. *Id.* ¶¶ 23–24. After speaking with Mr. Ray, who informed them of the eviction proceedings, the officers "indicated to Mr. Turpin that he had been evicted" and needed to come out of the apartment. *Id.* ¶ 26. During that conversation Mr. Turpin admitted that he had forced entry into the apartment and acknowledged that while eviction proceedings had been entered against him, the Marshals Service had yet to remove him from the apartment. *Id.* ¶ 25. Mr. Turpin maintained that the Writ of Restitution against him had expired and that he had a right to remain in the apartment. *See id.* Following this

conversation, Officers Rowley and Strange entered the apartment, arrested Mr. Turpin, and forcibly removed him from the premises. *Id.* ¶¶ 26–30.

Following his arrest, Mr. Turpin was charged with destruction of property and resisting arrest and was prosecuted fully. *Id.* ¶ 29. Mr. Turpin's trial took place on July 9, 2017, and the next day, he was acquitted on all counts. *Id.* ¶ 31. On October 6, 2017, Mr. Turpin commenced this action in D.C. Superior Court, which the District of Columbia then removed to federal court. *See* Notice of Removal, ECF No. 1. Mr. Turpin has brought individual and municipal liability claims for Fourth Amendment violations pursuant to § 1983 against Officer Rowley, Officer Strange, and the District of Columbia, as well as common law tort claims against Officer Rowley, Officer Strange, the District of Columbia, and Mr. Ray. *See generally* Am. Compl. Before the Court today are motions to dismiss from Officers Rowley and Strange, the District of Columbia, and Mr. Ray. Each motion is now ripe for decision.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curium). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits, but rather whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering a motion to dismiss presumes the complaint's factual allegations are true and must construe them in a light most favorable to the plaintiff. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

While it is not necessary for the plaintiff to plead all elements of a prima facie case in the complaint, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Assuming all factual allegations are true, a plaintiff's right to relief must rise above "the speculative level." *Twombly*, 550 U.S. at 555–56 (2007) (citations omitted). A court need not accept a plaintiff's legal conclusions as true, *see Iqbal*, 556 U.S. at 678, nor presume the veracity of legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will therefore not withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## IV.    ANALYSIS

Officers Rowley and Strange contend that Mr. Turpin has failed to state a claim for violations of his Fourth Amendment rights, and that even if he has stated valid claims, the officers are entitled to dismissal on the constitutional claims on qualified immunity grounds. Defs.' Mem. P. & A. Supp. Mot. Dismiss ("Defs.' Mem.") at 6–12, ECF No. 9. Officers Rowley and Strange further assert that they are entitled to common law privilege for the additional false arrest and trespass claims, and that Mr. Turpin has failed to state claims for wrongful eviction and malicious prosecution. *Id.* at 12–14. The District of Columbia contends that Mr. Turpin has failed to both adequately plead a "deliberate indifference" municipal liability claim under § 1983, as well as state a claim for common law malicious prosecution. *Id.* at 15–18. Finally, Mr. Ray argues that Mr. Turpin has failed to state proper claims for wrongful eviction, false arrest, and malicious prosecution. *See generally* Def. Ray's Mem. Supp. Mot. Dismiss ("Def. Ray's Mem."), ECF No. 20-1. The Court will address each argument in turn.

## A.  § 1983 Claims Against Officers Rowley and Strange

Mr. Turpin has brought § 1983 claims against Officers Rowley and Strange, alleging they violated his Fourth Amendment rights against warrantless entry and unreasonable seizure when they (1) entered his apartment without a search warrant or the occurrence of exigent circumstances; (2) arrested him without a corresponding arrest warrant or probable cause; and (3) initiated criminal proceedings against him with "full knowledge" of the illegality of the arrest. Am. Compl. ¶¶ 32–57. Officers Rowley and Strange contend, given Mr. Turpin's unresolved tenancy status and his admission that he had participated in the destruction of property on the premises, that: (1) no predicate constitutional violations occurred because Mr. Turpin had no expectation of privacy in the home and probable cause existed for his arrest; and (2) even if a violation occurred, the officers are nonetheless entitled to qualified immunity because the violations were not "clearly established" under the circumstances. *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009); *see* Defs.' Mem. at 6–12.

The Supreme Court has identified a clear mandate for courts to resolve qualified immunity questions at the earliest possible stage of litigation, leading this Court to assess Officers Rowley and Strange's entitlement to qualified immunity at the motion to dismiss phase. *Pearson*, 555 U.S. at 231. While this Court recognizes a recent reluctance among other courts in this Circuit to make qualified immunity determinations prior to trial, the facts before the Court coupled with the case law regarding both Mr. Turpin's expectation of privacy in the apartment in question and probable cause surrounding his arrest allow for a qualified immunity assessment at this stage. *See Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 172 (D.D.C. 2018) (discussing circuit trend).

### 1. § 1983 Illegal Entry Claim

Mr. Turpin alleges that Officers Rowley and Strange violated his Fourth Amendment rights by illegally entering his apartment without a warrant or exigent circumstances. *See* Am. Compl. ¶¶ 32–42. Officers Rowley and Strange assert that Mr. Turpin has not pleaded sufficient facts to establish a reasonable expectation of privacy in the apartment at the time that would have entitled him to Fourth Amendment protection in the first place, but that even if he had, the officers are nonetheless entitled to qualified immunity for their actions. Defs.' Mem. at 8. The Court finds that clearly established law did not prohibit Officers Rowley and Strange's conduct under the circumstances, and that therefore, qualified immunity protects their actions, even if possibly mistaken. *See Pearson*, 555 U.S. at 236. Accordingly, Officers Rowley and Strange's motion to dismiss the illegal entry claim is granted on qualified immunity grounds.

Under 42 U.S.C. § 1983, a plaintiff may bring a claim against a defendant who, acting under color of state [2] or local law, deprived him or her of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C § 1983 (2018). The doctrine of qualified immunity in turn protects government officials from liability for corresponding civil damages insofar as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine exists to strike a balance between holding public officials righteously accountable for irresponsible acts, and shielding public officials from

---

[2] The District of Columbia is considered a "state" for purposes of a § 1983 claim. *See* 42 U.S.C. § 1983 ("[E]very person who, under color of any statute, ordinance, [or] regulation . . . of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."); *see also Boyd v. District of Columbia*, 526 F. Supp. 2d 44, 48 n.3 (D.D.C. 2007) ("[F]or the purposes of § 1983, the District of Columbia is treated as a state.").

any harassment or distraction that may inhibit their ability to reasonably perform their duties. *Pearson*, 555 U.S. at 231.

To determine whether a defendant is entitled to qualified immunity, courts undertake a two-pronged analysis, assessing "(1) whether the facts alleged show that the government official's conduct violated a 'constitutional right, and (2) whether that right was clearly established at the time of the incident." *Jiggetts*, 285 F. Supp. 3d at 171 (internal quotation marks and citations omitted). A "clearly established" right is one of "settled law" with a clear foundation in existing precedent. *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (noting principle must be "dictated by controlling authority [or by] . . . robust consensus of cases of persuasive authority" (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999))). Given the unique factual circumstances of each case, a qualified immunity determination hinges largely on an official's conduct in the particular factual circumstances and protects against reasonable mistakes of law, fact, or mixed questions of law and fact. *Pearson*, 555 U.S. at 231, 236; *see Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (finding that only those actions that are "clearly proscribed" by the law are unprotected by qualified immunity).

Under the first prong of the qualified immunity analysis, in order to determine whether Mr. Turpin's Fourth Amendment rights were violated, the Court would need to determine whether, given the District of Columbia's prohibition against self-help evictions, a tenant regains or retains a possessory right (and thus a Fourth Amendment expectation of privacy) to the premises once a Writ of Restitution has expired, but no eviction has formally been executed. *See Mendes*, 389 A.2d at 786–87 (holding evictions must be executed by appropriate legal process);

*see also* Pl.'s Opp'n. Ex. 1 (outlining Metropolitan Police Department ("MPD") policy against intervention in landlord and tenant disputes).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Payton v. New York*, 445 U.S. 573, 589–90 (1980). Absent exigent circumstances, warrantless entry into a home is patently unreasonable, even if probable cause is found to exist. *Id.* at 590. That being said, Fourth Amendment protections only apply when the plaintiff enjoys a subjective expectation of privacy in the premises in question and when that expectation of privacy is one that "society [is] willing to recognize . . . as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (alternation in original). While a strong body of case law both within this Circuit and others has attempted to address the issue of the expectation of privacy in landlord-tenant relationships, the unique scenario at hand has yet to be addressed. *See United States v. Curlin*, 638 F.3d 562, 565–66 (7th Cir. 2011) (finding that previously evicted tenant enjoys no expectation of privacy in home); *United States v. Struckman*, 603 F.3d 731, 747 (9th Cir. 2010) (noting that trespassers may not claim Fourth Amendment protections); *United States v. Gale*, 136 F.3d 192, 195–96 (D.C. Cir. 1998) (finding that tenant lacked expectation of privacy in apartment occupied illegally); *United States v. Ratcliffe*, No. 93-3096, 1994 WL 245598, at *2 (D.C. Cir. May 26, 1994) (finding that expectation of privacy does not extend to tenant whose continued presence was maintained through threats and coercion); *Hill v. G.E. Capital Mortg. Servs., Inc.*, 859 A.2d 1055, 1057 (D.C. 2004) (noting that tenant loses possessory rights once judgment of possession is entered against him).

However, given the second prong of the qualified immunity analysis, the Court need not reach a determination on the constitutionality of the actions in question to rule on Officers

Rowley and Strange's motion. *See Pearson*, 555 U.S. at 241 (noting flexibility of two-step inquiry and cautioning against deciding constitutionality questions unless unavoidable); *see also Raub v. Campbell*, 785 F.3d 876, 884 (4th Cir. 2012) (ruling on whether violation was clearly established law without reaching constitutionality of particular scenario); *Buchanan v. Maine*, 469 F.3d 158, 168 (1st Cir. 2006) (avoiding Fourth Amendment question where injury was "highly idiosyncratic and heavily dependent on the facts"). In Mr. Turpin's case, then, the applicability of qualified immunity turns on whether the facts as pleaded establish that Officers Rowley and Strange's conduct was clearly prohibited under circumstances before them. *Wesby*, 138 S. Ct. at 590 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The court concludes that they do not.

In order for Officers Rowley and Strange's motion to succeed on qualified immunity grounds, the facts available to the officers must have indicated that the consenting party (Mr. Ray) had legitimate authority over the premises and that entry into the home under the circumstances would not be a "clearly established" violation of Mr. Turpin's constitutional rights—in other words, that Mr. Turpin no longer enjoyed a Fourth Amendment expectation of privacy in the home. *Saucier*, 533 U.S. at 202; *see Illinois v. Rodriquez*, 497 U.S. 177, 186 (1990). While the constitutionality of the officers' conduct in the particular scenario has yet to be "clearly established," case law suggests that Mr. Turpin did not enjoy an expectation of privacy in the residence—supporting the officer's actions, rather than putting them on notice of their potential illegality. *Cf. Buchanan,* 469 F.3d at 169 (finding qualified immunity when "there is no case directly on point, [but] case law tended to support officer's actions, not put them on notice [of violation]"). The parties do not dispute the fact that Mr. Turpin was previously a long-term tenant of Mr. Ray's and that a judgment against Mr. Turpin had been entered in Landlord and

Tenant Court resulting in the issuance of a Writ of Restitution. Am. Compl. ¶¶ 15–16. Furthermore, the officers were informed by both parties that Mr. Turpin had broken back into the home. *Id.* ¶¶ 20, 24–25. Had Mr. Turpin not broken into the residence, or had a judgment not yet been entered regarding his eviction proceedings, this Court might have reached a different conclusion. However, even taking all of his factual allegations as true, Mr. Turpin was admittedly occupying the residence through forced entry, when he knew a Writ of Restitution was outstanding against him. *Id.* ¶ 25.

Based on the unsettled legal status of a Fourth Amendment expectation of privacy in this particular scenario and with an eye to Circuit case law, the Court finds that the officers' entry into the home upon permission of Mr. Ray was not a clearly established constitutional violation. *See Ratcliffe*, 1994 WL 245598, at *2 (finding in regard to landlord self-help laws that "[w]hether one has legitimate expectation of privacy in a given place . . . does not necessarily turn on nuances of local property law"). Accordingly, the Court grants Officers Rowley and Strange's motion to dismiss the illegal entry claim on qualified immunity grounds.

### 2.  § 1983 False Arrest Claim

Mr. Turpin also alleges that Officers Rowley and Strange violated his Fourth Amendment rights by subjecting him to a warrantless arrest without probable cause. Am. Compl. ¶¶ 43–51. Officers Rowley and Strange assert that no predicate Fourth Amendment violation occurred, and that even if it had, they are entitled to qualified immunity for their reasonable, if possibly mistaken, belief that probable cause existed for the arrest in question. Defs.' Mem. at 8.

While this Circuit has held that the issue of probable cause in a false arrest case is a mixed question of law and fact that should ordinarily be left to the jury, *see Amobi v. D.C. Dep't of Corrs.*, 755 F.3d 980, 990 (D.C. Cir. 2014), the Supreme Court's recent ruling in *District of*

*Columbia v. Wesby*, 138 S. Ct. 577 (2018), weighs in favor of a ruling on qualified immunity at this stage. *See Wesby*, 138 S. Ct. at 591 (noting officers are entitled to immunity even if they "reasonably but mistakenly" conclude that probable cause was present).

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Therefore, a warrantless arrest without probable cause is a "clearly established" constitutional violation. *Polk v. District of Columbia*, 121 F. Supp. 2d 56, 69 (D.D.C. 2000). Probable cause exists if under the totality of the circumstances, a prudent person would have concluded that there was a probability that a suspect committed a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014) (noting probable cause is not "high bar"). Thus, to survive a motion to dismiss on grounds of qualified immunity, the facts pleaded must establish that an arrest without probable cause occurred. *Saucier*, 533 U.S. at 207–08.

The officers in Mr. Turpin's case were informed by both Mr. Ray and Mr. Turpin that Mr. Turpin had broken a door to enter the residence and that an eviction judgment had been entered against him. Am. Compl. ¶¶ 24–25. For that reason, Officers Rowley and Strange claim that they acted under a belief and with evidence that a crime had occurred. Defs.' Mem at 8. Furthermore, Officers Rowley and Strange contend that they were acting pursuant to D.C. Code § 22-303, which prohibits the destruction of others' property, which they believed Mr. Turpin had violated when he broke the door. *Id.* Even viewed in a light most favorable to Mr. Turpin, the facts alleged in the complaint indicate that a police officer just arriving on the scene would likely have concluded that a crime may have occurred, and thus that the requisite probable cause existed for an arrest. *Beck,* 379 U.S. at 91.

That being said, as with the illegal entry claim, it is not necessary for the Court to reach a determination on the constitutionality of the specific action here. *See Pearson*, 555 U.S. at 241 (relaxing the two-step qualified immunity inquiry). Under the modified test established in *Pearson v. Callahan*, Officers Rowley and Strange may still claim qualified immunity as long as the alleged violation was not clearly established at the time. *Brown v. Fogle*, 819 F. Supp. 2d 23, 28–29 (D.D.C. 2011). To survive a motion to dismiss, Mr. Turpin must therefore allege facts sufficient to show that Officers Rowley and Strange violated a clearly established constitutional right, or that they were on notice of the illegality of their actions. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (stressing the need to identify a "case where an officer acting under similar circumstances . . . violated the Fourth Amendment"); *see also Boatwright v. Jacks*, 239 F. Supp. 3d 229, 233 (D.D.C. 2017) ("[P]laintiff must allege facts that plausibly establish the . . . defendants knew or should have known that the action . . . would violate plaintiff's rights." (internal citation and quotation marks omitted)); *Patterson v. United States*, 999 F. Supp. 2d 300, 312 (D.D.C. 2013) (same). For warrantless arrests in particular, the Court has noted that a "body of relevant case law" is necessary to establish the "answer" with regard to probable cause. *Wesby*, 138 S. Ct. at 590 (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

In *Wesby*, the Court granted qualified immunity to officers who arrested partygoers based on an inference that the arrestees did not have permission to use a vacant home. 138 S. Ct. at 586–88. The Court found that the conduct of the partygoers, coupled with the run-down state of the residence and the supposed landlord's reaction upon speaking to the police, combined to create probable cause that a crime had occurred, even if the police were ultimately mistaken. *Id.* at 591. The Court noted that while a reasonable officer in those circumstances could have concluded probable cause was present, given that there was no controlling case finding that

probable cause in the factual circumstances did *not* exist, the officers were entitled to qualified immunity even if ultimately no probable cause was found. *Id.* at 590–94 (requiring "high degree of specificity" in relevant case law to alert officer of clearly established violation).

As noted, the officers in Mr. Turpin's case were informed by both parties that Mr. Turpin had broken a door to enter the residence and were made aware that an eviction judgment had been entered against him. Am. Compl. ¶¶ 24–25. Thus, Officers Rowley and Strange claim that they acted under a belief that a crime had occurred. *See id.* Furthermore, Mr. Turpin has identified no controlling case law in which a Fourth Amendment violation has been found in similar circumstances. *See generally* Pl.'s Opp'n. Based on the facts alleged by Mr. Turpin and given the protection qualified immunity affords to officers' reasonable mistakes in judgment, Officers Rowley and Strange's qualified immunity claim succeeds here as well—especially in light of the Supreme Court's recent decision in *Wesby*. *See Wesby*, 138 S. Ct. at 590–91 (noting that lower court's failure to identify "a single precedent—much less controlling case or . . . consensus of cases" prohibiting officers' conduct weighed heavily in favor of granting qualified immunity); *Butz v. Economou*, 438 U.S. 478, 507 (1978) (protecting reasonable mistakes in judgment).

Given that no Circuit case law clearly "answer[s]" the question of probable cause under these particular circumstances, the Court finds that Officers Rowley and Strange's arrest of Mr. Turpin was not a clearly established constitutional violation. *Wesby*, 138 S. Ct. at 591. Accordingly, the Court grants the motion to dismiss the false arrest claim on qualified immunity grounds as well.

### 3. § 1983 Malicious Prosecution Claim

Mr. Turpin also alleges that Officers Rowley and Strange initiated criminal proceedings against him which resulted in a deprivation of his liberty constituting an unreasonable "seizure" in violation of the Fourth Amendment. *See* Am. Compl. ¶¶ 51–57. Officers Rowley and Strange assert that no predicate constitutional violation occurred to sustain the claim, but that even if it had, they are again entitled to qualified immunity for their actions. Defs.' Mem. at 7. The Court finds that even if Mr. Turpin had alleged facts sufficient to show that the initiation of criminal proceedings against him resulted in a Fourth Amendment "seizure," the unsettled nature of the law surrounding what constitutes a "seizure" in the District of Columbia for the purposes of a § 1983 malicious prosecution claim, coupled with the Court's prior determination that Officers Rowley and Strange are entitled to qualified immunity for the false arrest claim, necessitates a finding that Officers Rowley and Strange are entitled to qualified immunity in regard to the malicious prosecution claim as well. Accordingly Officers Rowley and Strange's motion to dismiss the final constitutional claim is granted on qualified immunity grounds.[3]

As noted previously, to determine whether Officers Rowley and Strange are entitled to qualified immunity the Court must assess (1) whether a predicate constitutional violation occurred and (2) whether that violation was "clearly established" at the time of the incident in question such that the officials were on notice that their conduct was prohibited. *Jiggetts*, 285 F.

---

[3] Aside from a cursory mention of qualified immunity in relation to Mr. Turpin's constitutional claims generally, Defendants offer little additional basis on which they rest their motion to dismiss the malicious prosecution claim, largely basing their claims on the notion that "if probable cause [for the arrest] exists . . . a claim for malicious prosecution cannot be maintained." Defs.' Mem. at 7 (citing *Pitt v. District of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007)). However, given the importance of addressing qualified immunity claims at the earliest possible stage of litigation, the Court will nonetheless engage in a qualified immunity analysis regarding Mr. Turpin's constitutional final claim. *See Pearson*, 555 U.S. at 231.

Supp. 3d at 171. In regard to Mr. Turpin's § 1983 malicious prosecution claim, the qualified

immunity analysis depends on whether Officers Rowley and Strange's conduct in participating in

or continuing criminal proceedings against him was clearly prohibited under the circumstances. [4]

*Wesby*, 138 S. Ct. at 590 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Unlike a false arrest claim, the "critical event" triggering liability for malicious

prosecution is the filing of a criminal charge. *Dellums v. Powell*, 566 F.2d 216, 220 (D.C. Cir.

1997); *see Wallace v. Kato*, 549 U.S. 384, 389–90 (2007) (distinguishing malicious prosecution

as "entirely distinct" from false arrest, because it "remedies detention accompanied, not by

absence of legal process, but by wrongful institution of legal process") (citing W. Page Keeton *et

al.*, Prosser and Keeton on Torts § 119, at 885–86 (5th ed. 1984)). Therefore, malicious

prosecution is a "clearly established" constitutional violation actionable under § 1983 to the

extent that criminal proceedings instituted against the plaintiff cause the plaintiff to be "seized"

in violation of the Fourth Amendment. *Pitt*, 491 F.3d at 511; *see also Britton v. Maloney*, 196

F.3d 24, 28–29 (1st Cir. 1999) (discussing differences between common law malicious

prosecution and § 1983 malicious prosecution). To support a § 1983 malicious prosecution claim

then, a plaintiff must plead facts establishing (1) that the defendant instituted or continued a

criminal proceeding against the plaintiff; (2) that the proceedings terminated in favor of the

plaintiff; and (3) that a predicate constitutional violation occurred as a result of the proceedings.

*See Mehari v. District of Columbia*, 268 F. Supp. 3d 73, 81–82 (D.D.C. 2017); *see also Gregory*

---

[4] There is little information on the record, or on the D.C. Superior Court docket, regarding the nature of Officers Rowley and Strange's involvement in the actual legal proceedings themselves and Mr. Turpin does not allege involvement past the initial arrest. *See See* Superior Ct. Docket, U.S. v. Charles Turpin, Case No. 2016 CMD 021218; Am. Compl. ¶¶ 29–31. Defendants, however, have chosen not to challenge the facial deficiencies of the claim and therefore the Court will not address them.

*v. City of Louisville*, 444 F.3d 725, 748 (6th Cir. 2006) (finding § 1983 malicious prosecution when the "gravamen of the complaint is continued detention without probable cause"); *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc) (finding malicious prosecution when "initiation of criminal charges . . . set[s] in force events that run afoul of explicit constitutional protection[s]"); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (holding that malicious prosecution actionable under § 1983 if there is deprivation of liberty "accompanying the prosecution").

Mr. Turpin has seemingly failed to plead facts establishing a predicate constitutional violation occurred in the first place. In *Pitt*, the plaintiff was detained post-arrest for ten days in a halfway house against his will and thus was "seized" in violation of the Fourth Amendment. 491 F.3d at 510. Additionally, in *Thorp v. District of Columbia*, the plaintiff was subjected to "burdensome" and "humiliating" pretrial conditions that the court deemed an illegal "seizure" in violation of the Fourth Amendment. 142 F. Supp. 3d 132, 145–46 (D.D.C. 2015). In contrast, Mr. Turpin alleges no such seizure. *See* Am. Compl. ¶¶ 29–31. The court in *Spiller v. District of Columbia* found that the plaintiff's allegations that he was "deprived of liberty" coupled with the mere fact that he was arrested and had to appear in court, were insufficient to satisfy the "modest" showing of restriction of liberty necessary for his malicious prosecution claim to survive a motion to dismiss. 302 F. Supp. 3d 240, 248 (D.D.C. 2008). Here too, Mr. Turpin simply alleges that he was subjected to "unnecessary and illegal detention" as a result of his arrest, but fails to allege any restriction on his liberty comparable to the violations in *Pitt* or

*Thorp*, or in fact any restriction on his liberty stemming from the prosecution itself. Am. Compl. ¶ 50.[5]

As noted previously in regard to Mr. Turpin's other constitutional claims, the court need not reach a determination on the constitutionality of Officers Rowley and Strange's actions to rule on their motion when the law surrounding the alleged violation was not "clearly established" at the time of the events in question. *See Pearson*, 555 U.S. at 240–41. Here, as with the illegal entry and false arrest claims, the Court finds that it was not clearly established. While the right to be free from malicious prosecution is a constitutionally cognizable claim under the Fourth Amendment, *see Pitt*, 491 F.3d at 511, that is "not enough" for a claim to survive dismissal on qualified immunity grounds. *Brosseau*, 543 U.S. at 198–99 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) ("[T]o avoid . . . qualified immunity . . . plaintiff was required to plead facts making out a violation of a

_____

[5] While the facial deficiencies of the complaint indicate that Mr. Turpin failed to plead the predicate constitutional violation necessary to survive a motion to dismiss for failure to state a claim, it bears mentioning that the Superior Court docket reveals that Mr. Turpin was subjected to drug testing while his case was pending, and was required to attend eleven court hearings prior to his trial, requirements which seemingly rise to the level of a Fourth Amendment seizure. *See* Superior Ct. Docket, U.S. v. Charles Turpin, Case No. 2016 CMD 021218; *see also Thorp v. District of Columbia*, 142 F. Supp. 3d at 145–46 (recognizing pretrial conditions as potential Fourth Amendment seizure). Because the D.C. Superior Court docket is a public document, the Court may take judicial notice of such documents without converting Defendants' motion to dismiss into one for summary judgment. *See Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

However, even if the Court were to exercise its discretion to grant Mr. Turpin leave to amend his complaint to include the restrictions revealed in the Superior Court docket, the unsettled nature of both the law surrounding the probable cause for the underlying arrest and the law surrounding the bounds of a § 1983 malicious prosecution claim indicate that even a properly pleaded predicate violation in this case would not ultimately survive Defendants' motion to dismiss on qualified immunity grounds.

constitutional right clearly established in a particularized sense.") (internal quotation marks omitted). The violated right must be clearly defined "in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198 (citations omitted).

In terms of a malicious prosecution claim, the Supreme Court as well as circuit courts around the country have struggled to define what exactly constitutes an unreasonable "seizure" in violation of the Fourth Amendment. *Spiller*, 302 F. Supp. 3d at 245–48 (D.D.C. 2018) (discussing unsettled case law); *see, e.g.*, *Wallace*, 549 U.S. at 390 n.2 (declining to define the "contours" of a Fourth Amendment malicious prosecution claim); *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999) (finding that required pretrial information disclosure sufficiently restricted plaintiff's liberty); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (finding that periodic court appearances restricted plaintiff's liberty); *Kingsland v. City of Miami*, 382 F.3d 1220, 1235–36 (11th Cir. 2004) (finding that mandatory interstate court appearances not sufficient deprivation of liberty); *Karam v. City of Burbank*, 352 F.3d 1188, 1193–94 (9th Cir. 2003) (finding that restriction on out-of-state travel not was sufficient deprivation of liberty); *Britton*, 196 F.3d at 28 (finding that mere burden of facing charges, absent arrest or detention, was not sufficient deprivation of liberty). The few cases in this Circuit that have directly addressed the issue make clear that a plaintiff must plead some sort of post-arraignment "seizure" to survive a 12(b)(6) motion, but the conditions that satisfy this "seizure" remain relatively undefined. *See Mehari*, 268 F. Supp. 3d at 81–82 (analyzing circuit law, upholding defendants' claim that plaintiff must allege "that he was held in custody subsequent to the initiation of the criminal prosecution against him" to state a claim for § 1983 malicious prosecution); *Spiller*, 302 F. Supp. 3d at 248 (noting that while only "minimal restriction" on plaintiff's liberty is required, mere allegations

that plaintiff was "deprived of liberty" were insufficient to show Fourth Amendment seizure when plaintiff was released directly following arraignment).

Given this Court's determination that no clearly established law prohibited Officers Rowley and Strange's conduct in relation to the arrest itself, the similarly unsettled law within this Circuit and others regarding what may or may not constitute the minimum requirements of a "seizure" for purposes of a § 1983 malicious prosecution claim creates a situation in which no clear case law existed to have placed Officers Rowley and Strange on notice that their actions in participating in the initial arrest may eventually subject them to liability for whatever pretrial conditions were imposed on Mr. Turpin following the filing of formal charges. In light of the scarcity of cases addressing the "contours" of § 1983 malicious prosecution claims directly, *Wallace,* 549 U.S. at 390 n.2, and the fact that Mr. Turpin's complaint simply does not indicate that any impermissible "seizure" occurred as a result of the charges filed against him, the Court dismisses the final § 1983 claim of malicious prosecution on qualified immunity grounds as well.[6]

## B.  § 1983 Claim Against the District of Columbia

Mr. Turpin's final constitutional claim alleges a right to relief from the District of Columbia on a theory of municipal liability based on a "failure to properly train, investigate and discipline MPD officers with respect to warrantless entries." Am. Compl. ¶¶ 87–88. Mr. Turpin

---

[6] Cases addressing qualified immunity in relation to § 1983 malicious prosecution claims often involve disputed questions of fact that warrant further discovery and make dismissal at this stage of litigation inappropriate. *See, e.g.*, *Jiggetts*, 285 F. Supp. 3d at 172 (declining to rule on malicious prosecution claim at motion to dismiss phase given disputed questions of fact surrounding plaintiff's underlying arrest). In this case however, neither party has chosen to raise material factual questions regarding Mr. Turpin's underlying arrest or his subsequent prosecution, allowing the Court to reach a determination based on qualified immunity at this stage. *See generally* Am. Compl.; Pl.'s Opp'n; Defs.' Mem.; Defs.' Reply.

alleges that District of Columbia policymakers have been made aware of a pattern of ongoing constitutional violations stemming from a lack of police training regarding warrantless entries and acted with deliberate indifference to the need to correct the problem. *Id.* ¶¶ 84–87. Following the District's motion to dismiss, Mr. Turpin withdrew his municipal claim and reserved his "right to reinstate" subject to discovery. Pl.'s Opp'n at 24. Defendants now claim that not only does Mr. Turpin fail to adequately plead the pattern of abuses required to sustain a deliberate indifference claim against a municipality, but that his subsequent withdrawal of the claim necessitates dismissal with prejudice. Defs.' Reply Pl.'s Opp'n Defs.' Mot. Dismiss ("Defs.' Reply") at 2, ECF No. 13. Defendants' arguments regarding Mr. Turpin's withdrawal of the claim are correct and thus the claim is dismissed, but, as explained below, the Court dismisses the claim without prejudice.

Local Civil Rule 7(b) provides that if a memorandum in opposition to a motion "is not filed within the prescribed time, the Court may treat the motion as conceded." Local Civ. R. 7(b). While it is "well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court *may* treat those arguments that the plaintiff failed to address as conceded" under Local Rule 7(b), the decision whether to treat a motion as conceded is highly discretionary. *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)) (emphasis added) (citations omitted); *Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 116 (D.D.C. 2014). Furthermore, dismissal with prejudice is the exception, rather than the rule. *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) ("Dismissal with prejudice is the exception, not the rule, in federal practice because it 'operates as a rejection of the plaintiff's claims on the merits and [ultimately] precludes further litigation of them.'") (alteration in original) (quoting *Belizan v.*

*Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)); *see Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476, 484 (D.C. Cir. 2016) (deeming dismissal with prejudice an "onerous bar to preclude [plaintiff] from ever having his claims heard").

Following the District's motion to dismiss, Mr. Turpin withdrew his municipal claim and reserved his "right to reinstate" subject to discovery. Pl.'s Opp'n at 24. Defendants ask that the court treat Mr. Turpin's response to Defendants' motion to dismiss as a concession and dismiss the municipality claim with prejudice. Defs.' Reply at 2. As explained above, Mr. Turpin's withdrawal of his claim constitutes a failure to even cursorily refute the District's challenges to his allegations and therefore, Defendants' motion to dismiss the municipal liability claim is conceded. *See* Pl.'s Opp'n at 24; *cf. Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018) (explaining that Rule 7(b) "is not a tool to subvert the FRCP 12(b)(6) inquiry simply because the court finds the plaintiff's opposition to the motion to dismiss, although pressed, underwhelming"). However, this Court sees no reason to dismiss the claim with prejudice at this juncture. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Accordingly, the Court grants the District's motion to dismiss the § 1983 municipal claim, but the claim is dismissed without prejudice.

## C.  The Remaining State Law Claims

Mr. Turpin has also brought D.C. common law claims against Officers Rowley and Strange for wrongful eviction, trespass, false arrest, and malicious prosecution; against the District of Columbia for malicious prosecution; and against Darnell Ray for wrongful eviction, false arrest, and malicious prosecution. *See generally* Am. Compl. While this Court originally

exercised supplemental jurisdiction over the state law claims at issue because they formed part of "the same case or controversy" as Mr. Turpin's federal claims, given that the Court has concluded that Mr. Turpin's constitutional claims will not survive Defendants' motion to dismiss, the Court consequently lacks independent subject-matter jurisdiction over the remaining state law claims. Accordingly, the common law claims are remanded to the D.C. Superior Court.

Federal courts have supplemental jurisdiction over state claims that form the same "case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367 (2018). Courts may decline to exercise jurisdiction over such claims if the district court has "dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Courts determining whether to exercise supplemental jurisdiction after federal claims have been dismissed must consider "judicial economy, convenience, fairness, and comity." *Shekoyan v. Sibley Int't.*, 409 F.3d 414, 424 (D.C. Cir. 2005) (citation omitted); *Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 82–83 (D.D.C. 2016), *aff'd*, 698 F. App'x 616 (D.C. Cir. 2017) (citation omitted) ("[F]airness . . . point[s] in favor of allowing Plaintiffs to pursue their claims . . . in state court."); *see Turner v. Corrs. Corp. of Am.*, 56 F. Supp. 3d 32, 37 (D.D.C. 2014) (upholding court's decision to decline supplemental jurisdiction given early stage of case in federal court and finding that remand to state court did not prejudice plaintiff who originally filed in state court and "prefers that forum"). While the decision is left to each court's discretion, *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), when all federal claims are eliminated before trial, the "balance of factors" weighs toward declining to exercise jurisdiction over the remaining state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As such, the D.C. Circuit has identified a clear preference for courts to exercise their discretion to remand state claims back to District of Columbia courts once all federal questions have "left

the building." *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 400 (D.D.C. 2016) (quoting *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 417 (D.C. Cir. 2014)).

In Mr. Turpin's case, these factors weigh against the exercise of jurisdiction over his remaining state law claims. The federal claims over which the Court exercised federal question jurisdiction are dismissed and the remaining claims are based entirely in District of Columbia law. Furthermore, discovery in this case has not yet begun, and the case has not progressed in federal court past Defendants' motions to dismiss. Additionally, because Mr. Turpin originally filed his case in D.C. Superior Court, he will not be prejudiced by a return to his preferred forum. *See Turner*, 56 F. Supp. 3d at 37; *cf. Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 378–79 (D.C. Cir. 2010) (finding that the court appropriately retained jurisdiction over state claims when federal "time and resources" were already invested); *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 89–90 (D.D.C. 2015) (same). Extensive federal judicial resources have not been expended on this case yet, and as a D.C. resident, Mr. Turpin will not be inconvenienced or disadvantaged by pursuing his case in Superior Court. Because no clear unfairness will result from a decision not to exercise supplemental jurisdiction over Mr. Turpin's remaining claims, the common law claims against Officers Rowley and Strange, the District of Columbia, and Mr. Ray are remanded to D.C. Superior Court where Mr. Turpin may continue to prosecute his local causes of action under D.C. law.[7] *See Floyd v. PNC Mortg.*, 216 F. Supp. 3d 63, 68–69 (D.D.C. 2016) (finding that when case was originally removed from state court, remand was "fairer course" than dismissal without prejudice).

---

[7] Officers Rowley and Strange assert that they are entitled to common law privilege in relation to Mr. Turpin's common law claims against them. Defs.' Mem. at 3. Mr. Ray asserts Mr. Turpin fails to state a claim upon which relief can be granted in relation to all of the claims against him. Def. Ray's Mem. at 2–5. Because the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this case, it does not reach either issue.

## V.    CONCLUSION

For the foregoing reasons, the Court grants Officers Rowley and Strange's motion to dismiss the § 1983 claims of illegal entry, false arrest, and malicious prosecution. The Court additionally grants the District of Columbia's motion to dismiss the § 1983 municipal liability claim. As to the remaining claims, the Court remands the case to the D.C. Superior Court for adjudication of the state law claims against Officers Rowley and Strange for trespass, illegal entry, false arrest, and wrongful eviction; against the District of Columbia for malicious prosecution; and against Darnell Ray for wrongful eviction, false arrest, and malicious prosecution. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 12, 2018                                                      RUDOLPH CONTRERAS
                                                                                  United States District Judge